Horkbdowek, C. J.
If this court was right in setting aside the nonsuit, and sending the cause back to be tried upon the merits, then upon the record as it now appears before us, we must affirm the j udgment. But if we wrere wrong then, now is a proper time for us to retrace our steps, and correct our error.
The court for the trial of small causes, under our statute, is a court of limited jurisdiction, — limited as well in respect of its territorial authority, as in respect to the nature of suits it may entertain, and the amount for which it may render judgment : it is therefore an inferior court, but not in that sense in which the term is applied to some of the limited jurisdictions in England. It is declared to be a court of record, and constitutes an important branch of the judiciary system of our State, and is therefore to be treated with more consideration and respect, than is due to those petty and summary tribunals, embraced under the name of inferior courts in England.
In my opinion therefore, no action will lie against a justice of the peace, for anything done by him as such, that would not equally lie against a member of this court, if the act complained of j had been done by one of us.
The question then occurs, will an action lie against a judge of a court of record, for any act done by him as such, iu any case; and if in any, in what cases ?
That an action will not lie against a judge for an error in judgment, however prejudicial to the rights of the party such error may be, is a proposition so plain, so consonant to reason, and so essential to the very existence of courts of justice, that it needs neither authority nor argument to support it.
But suppose the judgment to have been given malafides, and under the influence of bribery and corruption, may not the injured party be permitted to aver such abuse of power, and to recover damages, if he can prove his averment! I answer no. Every argument that forbids an action for a mistake in judgment, applies with equal, nay, with increased force against such *476 a proposition. No man would accept the office of a judge, if every disappointed and ill tempered litigant, might compel him to join issue, and submit himself to trial upon the question of his intégrity.
The argument of Chief Justice Kent, in Yates v. Lansing, 5 Johns. R. 287, and the authorities cited and commented on by him, are conclusive and satisfactory on this point. The same doctrine was fully recognized by this court, in the case of Little v. Moore, 1 South. R. 74, and sustained by the cases referred to by Chief Justice Kirkpatrick. See Mather v. Hood, 8 Johns. R. 44, 51; Groenvelt v. Burwell, 1 Ld. Raym. 454.
Nevertheless, there are cases in which a justice of the peace, and perhaps other judicial officers, may be sued for acts done by them in their official character; and whether an action will lie in such cases or not, does not depend upon the quo animo, with which the act was done; but upon the right and authority of the officer to do the act at all. My opinion is that where the act is a judicial one, done pendente lite, no action lies, however wrong and injurious to the party, whether the act was done mala jides, or with the most honest intentions, provided, the justice had jurisdiction of the parties, and of the subject matter of the suit. But on the other hand, if he had not, and could riot have jurisdiction of the cause, that is of the subject matter; or where he has jurisdiction of the subject matter, but proceeds without having obtained jurisdiction over the party, by having him in court, by process or otherwise, actually or constructively, his acts though strictly of a judicial character, are coram non judice and void, and he and all persons concerned in executing his judgment or award, would be trespassers. So too, where a ministerial duty or authority is annexed to a judicial office, if the officer executes that ministeriál duty wrongfully, whether by mistake or fraud, he is answerable to the injured party iri a suit at láw. I will illustrate my meaning by a few plain cases: a justice of the peace, has jurisdiction in actioris of debt to a limited ¿mount. If such an officer should sit down in his closet and enter up a judgment and issue an execution against me, for fifty or a hundred dollars, without having issued any process whatever requiring my appearance, it would be a void proceedirig, and he would be a trespasser; for although he had jurisdiction of the subject matter, he had no juris *477 diction of me. But if a suit has been instituted before such justice, and is actually pending in his court, any order or judgment. he may render therein, within the scope of his authority to render, however wrong it may be in that particular case, is valid and binding on the party, until reversed for error; and the quo animo with which such order or judgment was made, cannot be enquired into, in a civil suit against the justice, by the party injured.
Again : The court for the trial of small causes has no right to entertain an action of replevin or for words spoken, and some other actions.. Now, if a justice of the peace, should take cognizance of such a suit against ine, and proceed lo judgment and execution therein, he and all acting under him in the matter, would be trespassers, however ignorantly or innocently he might have acted in the premises. For where there, is no jurisdiction there is no judge; the proceeding is as nothing; 10 Rep. 76, a. b.; Perkins v. Proctor, 2 Wils. 382, and cases there cited. I have put these cases, to show' that where the proceeding complained of is of a judicial character, the liability of the justice to answer civiliier to the aggrieved party, does not depend upon the quo animo, with which he acted; but upon his authority to act at all in the premises.
If the erroneous and injurious judgment was rendered, upon a matter and in a cause of which the justice had a jurisdiction, and in which he had a right to act; a right to hear and determine; then, whether the judgment or proceeding complained of, was the result of ignorance, or honest mistake; or of partiality and corruption, the only remedy of the injured party is by writ of error or Certiorari, in the nature thereof. For the fraud or corruption, the justice can only be questioned by impeachment.
If this view of the subject is correct, and I feel compelled to think it is so, as well upon principles of public policy, as upon the whole current of authorities, then we were wrong in setting aside the nonsuit and sending this cause back to be tried before the Court of Common Pleas; and, consequently, we must now correct our own error, by reversing this judgment. It appears by the plaintiff’s own showing in his state of demand, that the action brought against him by Kip, before justice Taylor, was an action of debt for a sum within the jurisdiction of a justice; that *478 he had been served with a summons to appear and answer to that suit. It appears further, by the return to the Certiorari, that the summons had been regularly issued, served and returned. There was then a cause depending before the justice, regularly instituted, over which, and the parties thereto, he had lawful jurisdiction. That the justice committed an error, in adjourning the cause before the summons had been returned and the parties were in court, there is no doubt. The case of Halsey v. Whitlock, 2 Penn. R. 869, and repeated decisions since by this court, have settled that point; and I am sorry to be compelled to add, that in this case, there is reason to fear that the justice knew he was doing wrong. If the affidavit of Mr. Zabriskie speaks the truth, he certainly did. But then it does not follow that this action will lie against the justice. On the contrary, if justice Tavlor may be compelled to join issue in this case, on the bonafides of his judicial conduct, so may every other judge and justice at the suit of any litigious party, however little ground there may be to question his integrity. The judicial errors of a justice must be corrected by an appeal or writ of Certiorari; but his judicial corruption, by the court of impeachments.
Iam not aware of any case in this court, or in any book of authority, inconsistent with the principles I have stated. In Neighbour v. Trimmer, 1 Harr. R. 58, the action was not for giving an unjust or illegal judgment against the party; but for fraudulently concealing from him the fact, with intent to defeat, and thereby actually defeating the plaintiff from prosecuting an appeal.
In Biglow v. Stearns, 19 Johns. R. 39, which was an action for unlawfully convicting and imprisoning the plaintiff, for disturbing a religious' assembly, the verdict against the justice was sustained upon the ground, that he iad no jurisdiction of the person of the plaintiff in that suit; having convicted him in his absence, contrary to the express direction of the statute. In Vosburgh v. Welch, 11 Johns. R. 175, the justice had issued an attachment against the party as an absent debtor, without any proof or oath to justify such process under the statute. The issuing of the attachment was a ministerial, not a judicial act, and the justice was bound to pursue the direction of the statute under which he acted.
*479 In Matther v. Hood, 8 Johns. R. 44, the court take the distinction between judicial and ministerial acts, and held the record of conviction not traversable, because it was a judicial sentence. It is unnecessary to pursue the cases further. I am of opinion the judgment must be reversed.
Foiit), J.
George Doremus brought an action of trespass, in the court for trial of small causes, against William R. Taylor, Esq. a justice of the peace, for taking and carrying away his goods. He showed in his state of demand, that the said justice issued against him, a summons, to appear in the court for trial of small causes, on the 6th of April, 1835, to answer to Solomon Kip, in a plea of debt; that he, Doremus, appeared on the day mentioned in the summons, but neither the Justice nor Kip attended on that day, nor was the cause adjourned to any other time; yet that on the following 9th of the same mouth, she justice, without any jurisdiction whatever, gave a pretended judgment against him, Doremus, in his absence, in favour of said Kip, for fifty-nine dollars and eighty-five cents of debt, well knowing that the said pretended judgment was fraudulent and void, and that on the following 12th of the same month, the said justice wilfully, maliciously and corruptly, issued an execution on the said pretended judgment, and thereby caused the goods of the said Doremus to be unlawfully taken and carried away, to his damage, &c. The cause was tried, and the jury found a verdict against the justice, for sixty-five dollars and forty-one cents damages; from which he appealed to the Court of Common Pleas for the county of Bergen. On the trial of the appeal, it appeared, that after the summons had been issued and served, the justice found that he himself could not possibly attend on the day appointed in it, and therefore, before the day arrived, he entered an adjournment of the cause to the 9th of April, in the absence of both the parties; but the notice of this adjournment, which he sent to Doremus the defendant in the suit, which the justice supposed he had received, never came to his hands. It was the opinion of the court of appeals, that a civil action would not lie against a judge for any error or mistake committed by him in the progress of a suit, and therefore they ordered a nonsuit. This judgment of nonsuit was afterward set aside in the Supréme *480 Court on Certiorari, and the record was remitted back to the court of appeals, with directions to try the cause. The court of appeals did so, and the jury before them found a verdict against the justice, for seventy dollars damages, whereon the court rendered judgment. This judgment being now brought here by Certiorari, and the whole cause fully understood, the question is, whether a civil action will lie against the judge of a court of record, for an error in law, committed by him in a judicial proceeding.
It seems to be a prevalent opinion among the magistrates, that when a day has been prefixed, by summons or adjournment, for a meeting of the parties before him, and he afterwards foresees that sickness or some imperious necessity will prevent his attendance on that day, that he may lawfully, in the absence of both parties, adjourn the cause to another day, and send them notice of the adjournment. It is however a mistake; for though a justice is empowered to do some official acts, when both parties are not present, such as to receive an application for a j;ury, to award a venire to a constable, and to grant subpoenas for witnesses, there is no express or implied authority to alter the day appointed for meeting, before it arrives. If sickness, or other imperious obstacle should prevent the justice from attending at the day prefixed, the plaintiff has no other way than to sue out a new summons. It seems to many magistrates, much more reasonable, in order to save such a waste of costs, time, and expenses, to adjourn and send notice of it, and its reasonableness has led many into a belief that it is lawful; not considering that where there is a written statute, and. a day is fixed according to it, that it overcomes all reasoning from expediency, about it. In the progress of the cause before the justice, his inability to attend on the return day, occurred, and raised before him the very point I have been considering. He was bound to decide upon it one way or the other, judicially, and being misled by what seemed to him the more reasonable opinion, he mistook the law. It becomes therefore a very important question, if a judge while sitting in a court of record, unhappily mistakes the law, whether he is liable on that account to be sued for damages in an action by one of the parties. I say, while sitting in a court of record; for though the act constituting courts for the trial of small causes, gives to a justice of the peace, a special and limited jurisdiction, it declares *481 “ that the said court shall be a court of record.” (Rev. Laws, 629, section 1.)
Sargeant Hawkins, b. 1, ch. 72, section 6, states the exemption of judges from liability to civil suits, for what they do as judges, in the following terms: “As the law has exempted jurors from the danger of incurring any punishment in respect of their verdicts, it has also freed the judges of all courts of record from all prosecutions whatsoever, except in the parliament, for any thing done by them openly, in such courts, as judges: ” and the exemption is given for this strong reason, that no judiciary could be maintained, if the judges should be continually exposed to the prosecutions of all those whose partiality to their own causes, would induce them to think themselves injured. And the decision of the court, as it was delivered by De Giíey, Chief Justice, in Miller v. Searle, 2 Bl. Rep. 1145, is no less explicit. “That the judges of the superior courts of general jurisdiction,, are not liable to answer personally for their errors in judgment;. that the protection to them is absolute and universal. But with respect to the inferior courts, it is only while they act within their jurisdiction.” And equally decisive is the opinion of the Supreme Court of Connecticut, in the case of Phelps v. Sill, 1 Day's Cas. in Err. 315; they said, “ It was a settled principle, that a judge is not to be questioned in a civil suit, for doing an official act, in the exercise of judicial power. If by any mistake in the exercise of his office, a judge should injure an individual, hard would be his condition, if he were to be responsible for damages. The rules and principles which govern the exercise of judicial power, are often complex, and appear under different aspects, to different persons, and no man would accept the office of judge, if his estate were to answer for every error in judgment; or if his time and property were to be wasted in litigations with every man whom his decisions might offend.” The official acts of the superior courts, will be presumed to be done within the scope of their authority, unless the contrary be clearly shown, because they have a general jurisdiction; whereas courts of special and 1 limited jurisdiction, must show their acts to be done within their jurisdiction; and perhaps this is the only distinction between their immunities. But one rule is universally admitted,, that the judge of no court, superior or inferior, can be questioned *482 in a civil action, for an error committed by him while acting within the limits of his jurisdiction. His errors or mistakes are to be corrected’ only by appeal, Certiorari, or writ of error to a superior court. If he exceed the limits of his jurisdiction, his acts will be as those of a private person, and coram non judice. In order to be exempt from liability to a civil action, his jurisdiction .must extend to the matter before him, and also to the person; and that the jurisdiction of the justice was, in both these respects, ample, cannot, in my mind, admit of any doubt. The matter, before him was a demand for a debt under a hundred dollars, and the statute gives to justices of the peace jurisdiction “in every suit of a civil nature at law,” where the matter in dispute does not exceed that sum. There can be as little doubt that he had jurisdiction of the person, for a legal summons had been served on Mr. Doremus, and an action was legally depending, in which he decided the point touching the adjournment.
It is argued that by not attending at the return of the summons, the suit was discontinued; that the summons had expired by its own limitation; and that his process had become extinct; so that the judgment, entered afterward, by default, was under no process, and therefore extra judicial and void. This argument rests on an assumption that the adjournment was illegal. If on the other hand, the adjournment was legal, it continued thé suit commenced by summons, as other legal adjournments do. Now who was to judge of the legality of such an adjournment, but the justice? The point unavoidably arose in the cause before him, out of his inability to attend; he was compelled to give an opinion upon it, and he gave it as judge of the court; for the summons had not then run out, buc was in full being and operation; and the decision being cast upon him, it became, in the strictest sense of the phrase, a judicial opinion, valid till set aside, for the correctness of which, his estate cannot be liable in a civil action. All the cases before cited, demonstrate the law to be so, and it has been so held from time immemorial. In Yates v. Lansing, 5 Johns. Rep. 282, wherein Kent, Chief Justice, traces up the law through all the courts, to the time of the Year books.
Again it maybe observed that the record of every court of justice, is of such high verity in law, that while it stands unre *483 versed, no averment can be received to impeach it; yet this action is to recover back the money awarded in that record, upon an averment that it was wrongfully awarded by the court; thus prostrating the record itself, although it remains in full force and unreversed.
Again, though upon the point of adjournment, the decision of the justice was wrong, none but a court of supervisory power, could pronounce it to be so ; another justice was bound to receive that record, as verity, and yet we find another justice entertaining a civil action against the former judge, in order to try whether that recorded judgment of a co-ordinate judge, was legal or not. He finds by Ms record that it was not legal, and thus we have two records contrary to each other, entitled to verity. At this rate nothing prevents a third justice from entertaining an action against the second, to try the legality of his record, and so a fourth justice against the third. Such proceedings among co-ordinate justices, need no more than a simple statement, to evince the absurdity of them. The record of a justice while acting within the limits of his jurisdiction, possesses all the verity of a record of the Supreme Court, and is equally conclusive until it be reversed. A justice is not suable in a civil action for his decision as a judge. If the defendant supposed the decision to be erroneous, the law afforded him a legal and an easy remedy by Certiorari. He had no right to try the legality of the proceedings in this collateral way, by suing for damages for a mistake in law; and I am of opinion that the judgment of the Common Pleas must be reversed.