[Civ. No. 1750.   Third Appellate District.—November 9, 1917.]

# MATTHEW S. PLATZ, Appellant, v. A. W. MARION, Respondent.

CRIMINAL LAW—COMMON BARRATRY—JURISDICTION—JUSTICES' COURTS. The crime of common barratry, by reason of the nature and extent of the punishment prescribed therefor, is what may be and often is termed, in contradistinction to indictable misdemeanors, a simple misdemeanor, of which justices' courts have general jurisdiction.

JUSTICE OF PEACE—ISSUING OF WARRANT UPON DEFECTIVE COMPLAINT— LACK OF BAD FAITH—NONLIABILITY FOR DAMAGES FOR FALSE IM- PRISONMENT.—A justice of peace is not liable for damages for false imprisonment in issuing a warrant for and causing the arrest of an attorney at law upon a complaint filed with him which attempted to charge, but was wholly insufficient to charge, the attorney with the crime of common barratry, in the absence of any claim that the justice was actuated by malice or corrupt motives, his action being based upon an erroneous determination as to the sufficiency of the complaint.

APPEAL from a judgment of the Superior Court of Kern County.   J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

C. E. Arnold, and Matthew S. Platz, for Appellant.

Emmons & Johnstone, and Foster & Barnhart, for Re- spondent.

HART, J.—Plaintiff, an attorney at law, practicing in Kern County, brought the action against defendant, a justice of the peace in said county, to recover twenty-five thousand three hundred dollars for false imprisonment.   A demurrer to the amended complaint was sustained, plaintiff failed further to amend, and judgment by default was entered against him, from which judgment he prosecutes this appeal.

It is alleged in the amended complaint that, on or about March 9, 1915, defendant issued a warrant for the arrest of plaintiff for the crime of common barratry; that plaintiff was arrested under said warrant and was released upon bail; that, on the 12th of March, 1915, plaintiff's bondsmen surren- dered him into the custody of the sheriff, whereupon he se-

cured another bail bond and was released; that, on March 18th, the bondsmen on said second bail bond surrendered plaintiff to the sheriff and he was imprisoned in the county jail from that time until about noon of the nineteenth day of March, 1915. On said last-named date, plaintiff applied to the supreme court for a writ of *habeas corpus,* which was granted, and plaintiff was released upon giving bail; that, on the fifth day of April, 1915, the supreme court ordered the release of plaintiff "by reason of there not having been filed with said justice of the peace any complaint setting forth any facts showing that this plaintiff had been guilty of any public offense." It is then alleged "that defendant was wholly without jurisdiction to issue said warrant of arrest or to order this plaintiff held to bail or to be committed," and that said arrest and imprisonment were "without any right or authority so to do."

Attached to the amended complaint and made part thereof is a copy of the complaint filed with defendant as justice of the peace upon which said warrant of arrest was issued, which complaint, after the entitlement thereof, reads as follows:

"Personally appeared before me this 9th day of March, 1915, W. C. Dorris, of Bakersfield, county of Kern, state of California, who being first duly sworn, complains and accuses Matthew S. Platz of the crime of common barratry, committed as follows: That the said Matthew S. Platz, on the dates hereinafter mentioned, at Bakersfield, and in said county of Kern, state of California, did wilfully, unlawfully and maliciously engage in the practice of exciting and did excite groundless judicial proceedings in the following manner and instances:

"1. Said Matthew S. Platz, on or about the 9th day of April, 1914, did institute and excite a certain attempted appeal from a judgment of the superior court of the state of California in and for the county of Kern, in an action entitled *People of the State of California on the relation of W. C. Dorris, Plaintiff, v. James McKamy, Defendant,* being numbered therein as Civil Action No. 9036, which said appeal was attempted to be taken to the supreme court of the state of California, and was groundless and void, as the said Matthew S. Platz then and there well knew;

"2. That thereafter, on or about the 7th day of October, 1914, the said Matthew S. Platz initiated and excited an at-

tempted proceeding in the supreme court of the state of California against the state of California by James McKamy, Petitioner, and against the superior court of the State of California, and sought to obtain in said proceeding last mentioned, a writ of review of the proceedings and said action No. 9036, in the superior court of Kern county, which said application for said writ of review in said supreme court was then and there groundless, as the said Matthew S. Platz then and there well knew; that thereafter said writ of review was denied by an order of the supreme court of the state of California.

"3. That thereafter, on or about the 14th day of February, 1915, the said Matthew S. Platz initiated and excited an attempted proceeding in the supreme court of the state of California, wherein and whereby the said Matthew S. Platz filed a petition to vacate the order entered by said supreme court, refusing the writ of review, which proceeding was then and there groundless, as the said Matthew S. Platz then and there well knew; that said petition was thereafter denied by said supreme court of the state of California.

"4. That thereafter, on or about the 3rd day of November, 1914, said Matthew S. Platz excited and caused to be instituted a certain proceeding in the district court of appeal of the state of California, in and for the second appellate district, entitled, *James McKamy* v. *W. V. Matlack et al.,* as trustees of the city of Bakersfield, in which proceeding the said Matthew S. Platz sought to obtain and have issued out of said court a writ of prohibition directed to the defendants therein and prohibiting them from filling a vacancy in the office of the city marshal of the said city of Bakersfield, which said application was then and there groundless and void and vexatious, as the said Matthew S. Platz then and there well knew;

"And all of said proceedings above described were excited, instituted and initiated with corrupt and malicious intent to vex and annoy the enforcement of the judgment in said action No. 9036 of said superior court of Kern county, and to vex and annoy the superior court of said county and the judges thereof and the city trustees of the city of Bakersfield; all of which said acts were instituted and commenced while the said Matthew S. Platz was an attorney at law duly and legally admitted to practice in the courts of the state of California. Contrary," etc.

The demurrer interposed to said amended complaint was upon the general ground and also upon the special ground that certain allegations thereof were uncertain.

The ruling of the court below on the demurrer raises the question whether an individual may maintain an action for damages against a public officer clothed with judicial powers when, in the purported exercise of such powers, such officer does or performs some act in excess thereof which results in injury to the complaining party.

As the complaint herein shows, an attempt was made to charge the plaintiff before the defendant, as a justice of the peace, with the crime of common barratry, as the same is defined by section 158 of the Penal Code. Said section reads: "Common barratry is the practice of exciting groundless judicial proceedings, and is punishable by imprisonment in the county jail not exceeding six months and by fine not exceeding five hundred dollars."

Section 159 of said code provides: "No person can be convicted of common barratry except upon proof that he has excited suits or proceedings at law in at least three instances, and with a corrupt or malicious intent to vex and annoy."

The alleged complaint filed before the defendant, as a justice, against the plaintiff wholly and, to the legal mind, quite obviously failed to state the offense denounced by section 158 or any offense known to the laws of this state. It will be observed that the document upon which the warrant authorizing the arrest of the plaintiff was issued and upon which the latter was in fact placed under arrest merely sets forth that, in four different instances, the plaintiff, as an attorney at law, unavailingly sought as many different legal remedies in a judicial adjudication against a client of his as to the same subject matter. Manifestly, it is no crime nor, indeed, is it in contravention of the common ethics of the profession for a lawyer to resort to and exhaust every available remedy known to the law to relieve a client of the consequences of any judgment recovered in a court against him, and the complaint filed in the justice's court and purporting to charge him with the violation of sections 158 and 159 of the Penal Code clearly discloses that he did no more than this in the matter as to which it was therein alleged that his professional activities brought him within the ban of said sections. The complaint here states, as we have seen, that the supreme

court, in a proceeding upon *habeas corpus,* held that the complaint filed before the justice of the peace (the defendant) utterly failed to state any public offense against the plaintiff, and so ordered his discharge from arrest under the process issued upon said complaint, and we find, from a certified copy of the proceedings in that case before the supreme court, that the allegation of the complaint in that regard is correct. But, while all that has been said of the complaint is true, may it be held that the defendant, in a legal sense, exceeded the jurisdiction or powers with which the law clothes justices of the peace when he issued the warrant of arrest against the plaintiff under the circumstances disclosed by the complaint herein?

The crime of common barratry, by reason of the nature and extent of the punishment prescribed therefor, is what may be and often is termed, in contradistinction to indictable misdemeanors, a simple misdemeanor, of which it will, of course, be conceded justices' courts have general jurisdiction. (Pen. Code, sec. 1425; *People* v. *Sacramento Butchers' Assn.,* 12 Cal. App. 471, 485, 486, [107 Pac. 712].)

Section 1426 of the Penal Code provides: "All proceedings and actions before a justice's or police court, for a public offense of which such courts have jurisdiction, must be commenced by complaint under oath, setting forth the offense charged," etc. When, therefore, a complaint is filed before a justice of the peace charging or purporting to charge a person with a public offense of which the justice's court has jurisdiction, it then becomes the duty of the justice, in the exercise of the judicial powers with which he is clothed, to determine, upon an examination of the complaint, whether a public offense is therein stated against the party so sought to be charged. Upon the determination of this question rests the determination of the further question whether the justice is legally authorized upon the document filed as such complaint to issue his warrant for the arrest of the person of the party so charged or attempted to be charged. Since, then, he must pass upon the sufficiency of the complaint to state a public offense of which his court has jurisdiction for the purpose of determining whether he is by said complaint given the authority to issue a warrant of arrest, in doing so, as well as when issuing the warrant, if he concludes that a public offense cognizable in his court has been committed by

the person named in the document as the accused, he necessarily exercises the judicial powers with which the law invests his court as fully and completely as when, in presiding at the trial of a charge of misdemeanor of which his court has jurisdiction, he rules upon questions involving the admissibility of evidence. The acts referred to are as much and as clearly within his judicial functions or powers as any act which the law gives him the authority to perform as a judicial officer. As in ruling upon questions of the admissibility of evidence at a trial, so in the case of determining whether a complaint filed with him and purporting to charge against someone a public offense triable in his court does or does not state the offense so sought to be charged, he may fall into error or arrive at an erroneous conclusion upon the legal propositions involved. While, as in this case, the purported complaint upon which he issued his warrant of arrest might have been in law no complaint at all because of its utter failure to charge the offense thus attempted to be preferred against the defendant, yet it would or could hardly be said that, his court having general jurisdiction of the crime which was thus attempted to be stated, he was not acting within his powers as a judicial officer when performing the act of issuing the warrant of arrest, notwithstanding it subsequently developed that, through error of judgment, he issued the warrant upon a foundation insufficient in law to justify such action.

Section 1427 of the Penal Code provides, *inter alia,* that "if the justice of the peace . . . is satisfied therefrom [the complaint filed] that the offense complained of has been committed, he must issue a warrant of arrest," etc. This means, and can only mean, that, if the justice honestly and in good faith believes and concludes, from the complaint as filed, that the offense thus charged or attempted to be charged, being an offense of which his court has general jurisdiction, has been committed, he must thereupon issue a warrant of arrest for the party named in the complaint as the accused; and where the justice so satisfies himself that the offense "complained of" has been committed—that is, where he thus makes up his mind and thereupon issues the warrant of arrest honestly and in good faith or without being actuated therein by malicious or corrupt motives (and there is no such showing or even such claim made here), then, as a matter of pub-

lic policy and in the interest of the public service, he should not be held to be liable in civil damages because it transpires that, through mere error of judgment, he based the issuance of the warrant of arrest upon a complaint insufficient in law to charge the offense thereby sought to be stated. We base this conclusion upon the obvious proposition that if a judicial officer, whether of high or low degree in point of jurisdiction and dignity, were to be subject to the harassment incident to a civil action for damages by every suitor appearing as a litigant or as an accused in a criminal proceeding in his court, who has been disappointed over some ruling or judgment made or entered against him, the just and orderly administration of perhaps the most important department of the public service might be greatly handicapped and impaired, if, indeed, the ends thereof not wholly frustrated, and that public policy requires that no proceeding in law which might lead to such a situation should be countenanced or upheld.

It is true that, in some of the early cases, it seems to have been laid down that, while a civil action for damages for a wrongful act by a judicial officer, when purporting to be exercising the lawful jurisdiction of the court or tribunal of which he is the presiding judge, will not lie against a judge of a court of superior or general jurisdiction, even though such act may be shown to have been in excess of the jurisdiction of such judge, or done with malicious or corrupt motives, yet such an action will lie against a judge of an inferior court possessing special or limited jurisdiction if, in doing the act, such judge exceeds the powers expressly conferred upon him by law as such judge or upon the court of which he is the judge. (See cases cited in *Wyatt* v. *Arnot,* 7 Cal. App. 221, [94 Pac. 86].)

There are other cases, however, that hold that, upon principles of sound public policy, and to the end that the independence of the judiciary as a system shall always be maintained, the rule applicable to judges of courts of superior and general jurisdiction, exempting such judges from liability to an action for damages at the hands of a suitor claiming to have been injuriously affected by acts done in excess of their judicial powers, should be alike applicable to all judicial officers or public officers clothed with and whose duties require the exercise of judicial powers, including justices of the peace

and like inferior judicial officers whose jurisdiction, as established by law, is special and limited. The early case of *Grove* v. *Van Duyn*, 44 N. J. L. 654, [42 Am. Rep. 648], holds to this view. In that case, which, in its general aspect, resembles the case at bar, a justice of the peace had authorized the arrest of the plaintiff and held him to bail for unlawfully carrying away bundles of cornstalks, "under a statute which came no nearer to specifying such an offense than carrying away a stack of corn." It was held that the justice was not civilly liable. So much is said in the opinion in that case that is instructive and enlightening upon the question involved in the case before us, that we feel justified in quoting therefrom *in extenso*. The court said:

"Most of the general principles of law pertaining to that branch of this controversy which relates to the alleged liability of the defendant in this suit, who was a justice of the peace, are so completely settled as not to be open to discussion. The doctrine that an action will not lie against a judge for wrongful commitment, or for an erroneous judgment, or for any other act, made or done by him in his judicial capacity, is as thoroughly established as are any other of the primary maxims of the law. Such an exemption is absolutely essential to the very existence, in any valuable form, of the judicial office itself, for a judge could not be either respected or independent if his motives for his official actions or his conclusions, no matter how erroneous, could be put in question at the instance of every malignant or disappointed suitor. Hence we find this judicial immunity has been conferred by the laws of every civilized people. That it exists in this state in its fullest extent has been repeatedly declared by our own courts. Such was pronounced by the supreme court to be the admitted principle in the cases of *Little* v. *Moore*, 4 N. J. L. 74, 75, [7 Am. Dec. 574] ; *Taylor* v. *Doremus*, 16 N. J. L. 473, 476; *Mangold* v. *Thorpe*, 33 N. J. L. 134, 137; and by this court in *Loftus* v. *Fraz*, 43 N. J. L. 667. To this extent there is no uncertainty or difficulty whatever in the subject.

"But the embarrassment arises where an attempt is made to express, with perfect definiteness, where it is that acts done by a judge, and which purport to be judicial acts, are such within the meaning of the rule to which reference has just been made. It is said everywhere in the text-books and decisions that the officer, in order to entitle himself to claim the

immunity that belongs to judicial conduct, must restrict his action within the bounds of his jurisdiction, and jurisdiction has been defined to be 'the authority of the law to act officially in the particular matter in hand': Cooley on Torts, 417. But these maxims, although true in a general way, are not sufficiently broad to embrace the principle of immunity that appertains to a court or judge exercising a general authority. Their defect is that they leave out of the account all those cases in which the officer, in the discharge of his public duty, is bound to decide whether or not a particular case, under the circumstances as presented to him, is within his jurisdiction, and he falls into error in arriving at his conclusion. In such instances, the judge, in point of fact and law, has no jurisdiction according to the definition just given, over 'the particular matter in hand,' and yet in my opinion, plainly, he is not responsible for the results that wait upon his mistake. And it is upon this precise point that we find confusion in the decisions.

''There are certainly cases which hold that if a magistrate, in the regular discharge of his functions, causes an arrest to be made under his warrant on a complaint which does not contain the charge of a crime cognizable by him, he is answerable in an action for the injury that has ensued. But I think these cases are deflections from the correct rule in that they make no allowance for matters of doubt and difficulty. If the facts presented for the decision of the justice are of uncertain signification with respect to their legal effect, and he decides one way, and exercises a cognizance over the case, if the superior court in which the question arises in a suit against the justice differs with him on this close legal question, is he open by reason of his error to an attack by action? If the officer's exemption from liability is to depend on the question whether he had jurisdiction over the particular case, it is clear that such officer is often triable under such conditions, because the higher court, in deciding a doubtful point of law, may have declared that some element was wanting in the complaint which was essential to bring the case within the judicial competency of the magistrate.''

In the case of *Hayes* v. *Hutchinson & Shields*, 81 Wash. 394, [142 Pac. 865], a justice of the peace was proceeded against in an action for damages for causing the arrest of the plaintiff on an alleged illegal warrant of arrest, the claim

being that the complaint upon which said warrant was issued did not state a case against the plaintiff under the "arrest and bail" statute of the state of Washington. The supreme court of that state held that the action against the justice of the peace could not be maintained, and, in discussing the principles upon which cases of the character of the case at bar are to be decided and disposed of, uses the following language:

"Public policy demands, and the better reasoned cases hold, that a judge of inferior and limited jurisdiction, such as a justice of the peace, is not liable in damages for an unlawful arrest upon process issued by him in the absence of malice—and no malice is alleged—in a case which is colorably though not really within his jurisdiction," citing a large number of cases, among which is the Alabama case of *Broom* v. *Douglass,* 175 Ala. 268, [44 L. R. A. (N. S.) 164, 57 South. 860], in which the syllabus states the rule as declared therein as follows: "A judge of limited jurisdiction is not personally liable for issuing a warrant of arrest which he had no authority to do, in a case of which he had jurisdiction of the subject matter, if someone apparently qualified to do so appeared before him and made the requisite complaint, stating some facts which enter into and may under some conditions, or in co-operation with unstated facts, constitute a criminal offense, or stating some fact or facts which bear general similitude to a fact or facts designated by law as constituting the offense."

There are many other cases to the same effect as the above cases and among these the following may be mentioned: *Feld* v. *Loftis,* 240 Ill. 105, [88 N. E. 281]; *Brooks* v. *Mangan,* 86 Mich. 576, [24 Am. St. Rep. 137, 49 N. W. 633]; *Bohri* v. *Barnett,* 144 Fed. 389, [75 C. C. A. 327]; *Robertson* v. *Parker,* 99 Wis. 652, [67 Am. St. Rep. 889, 75 N. W. 423]; *McIntosh* v. *Bullard,* 95 Ark. 227, [129 S. W. 85].

The case of *De Courcey* v. *Cox,* 94 Cal. 665, [30 Pac. 95], cited and relied upon by the appellant, is, in the facts, wholly unlike the case at bar, and is therefore not in point. It appears from the opinion in that case that a complaint was made before the defendant, as justice of the peace, charging the plaintiff in the action for damages against said justice with refusing to return the sum of twenty dollars, alleged to have been overpaid said plaintiff by the El Cajon Vineyard

Company; that the justice, upon the complaint so made, issued a warrant of arrest upon which the plaintiff was arrested and taken before the said justice of the peace, and required to and did plead to said charge; that, after trial, the justice rendered judgment that plaintiff restore said amount of twenty dollars, or be committed to the county jail for twenty days, and that, pursuant to the judgment so rendered, the justice issued a commitment and delivered it to an officer, who executed it by imprisoning and confining the plaintiff in the county jail for the period of three days. The supreme court held that the complaint stated a cause of action in favor of the plaintiff and against the defendant (the justice of the peace) for damages for false imprisonment. But readily it will be observed that absolutely no public offense whatever under the law was stated in the so-called complaint filed with the justice against the plaintiff. The justice had no jurisdiction of the subject matter of the complaint, so far as a criminal charge was concerned. The complaint merely alleged that the plaintiff, by a mistake, had been overpaid, and there was no pretense, so far as the complaint disclosed, that he obtained or even retained the amount overpaid through any criminal act on his part. If the so-called complaint disclosed anything at all, it was merely a civil action for money had and received, and obviously the proceeding taken by the justice under the complaint was wholly and entirely *coram non judice*. It was not a case which called for the arrest of the person of the plaintiff. It was, as before suggested, in no sense a criminal case or a proceeding in which the plaintiff was accused of committing a public offense. The facts pleaded by the plaintiff in his action against the justice of the peace might, therefore, be held sufficient to raise the implication that malice characterized the acts of the justice of the peace in issuing the warrant for the arrest of and in committing the plaintiff to imprisonment.

In the present case, as we have shown, the offense attempted to be charged against the plaintiff is within the general jurisdiction of the justice's court and of the defendant, as a judge of such court. The subject matter of the complaint, though not well pleaded, the defendant, as a justice, had jurisdiction of. His failure to acquire jurisdiction of the person of the plaintiff lay entirely in the failure to state in the complaint facts sufficient to show that such an offense had been com-

mitted. There is, as seen, no charge of malice or corrupt motives in the act of the defendant in issuing the warrant. Obviously, an attempt—a very crude attempt, it is true—was made to charge the crime of common barratry, and it will be admitted that some facts were stated in the complaint which, co-operating with other conceivable facts not stated, would constitute the crime which it was attempted to charge. As above stated, in passing upon the question of the sufficiency of the complaint to state the offense named therein, the defendant was only exercising the powers with which he was invested as a judicial officer, and, although to a trained lawyer the insufficiency of the facts stated in the complaint to state the offense thus sought to be charged would readily appear, still we must assume, in the absence of a showing of malice or other bad motives in the act of the defendant in issuing the warrant, that in so doing he acted in good faith and in the honest belief that the document upon which he issued the warrant was sufficient in law as a complaint to justify that act. And it may with no impropriety be added that, while there is no legal presumption that the average person selected to fill the office and discharge the duties of a justice of the peace is not a lawyer, still, as a matter of very common knowledge, we know that, generally speaking, laymen, without any previous education in the law and who are not conversant with the technical rules of procedure whereby justice is required to be administered, are called to fill judicial positions of inferior and limited jurisdiction, and, therefore, it is not to be taken as a matter of astonishment that the law, substantive as well as procedural or adjective, is often administered in the inferior tribunals in a very primitive and irregular manner. Hence, it may readily be apprehended that it might and perhaps would prove to be destructive of an efficient branch of our judicial system, as it now exists, if it were found necessary to promulgate a rule whereby a justice of the peace may be subjected to a civil suit for damages for a mere error of judgment in the doing of some act or the issuance of some process which is within the general scope of his judicial powers, such act not having been prompted by an evil motive, but done in perfect good faith and in an honest belief that he was legally warranted in doing it. Indeed, it is very doubtful whether a lawyer, much less a layman, would be willing to accept the office of justice of the peace if it were

true, as a legal proposition, that he would be required to discharge his judicial duties or examine every legal document or proceeding filed or brought before him at the peril of an action for damages in case he, through error of judgment, did some act which, though within his general jurisdiction, was not authorized in the particular case in hand. Of course, in all such cases, someone may suffer injury, of a more or less aggravated nature, from the illegal act of the justice; but this result is only one of a number of inconveniences which are necessarily incident to a system, the product of the imperfect human mind, which has not attained, and, in the very nature of things, cannot attain to that degree of perfection which admits of no mistakes and the inconveniences or injuries following therefrom. But we may repeat; as the cases above mentioned with gratifying perspicacity explain, that, upon the soundest principles of public policy, injuries resulting from errors so committed are without a legal or any remedy, a situation necessary to the preservation, in all its essential features, of the very system itself established for the administration of the law.

For the reasons herein given, the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1918.