[No. B119136. Second Dist., Div. Five. Aug. 24, 1999.]

ROBERT SOLIZ, Plaintiff and Appellant, v.
ALEXANDER H. WILLIAMS III, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.C.

580

**COUNSEL**

Rees Lloyd for Plaintiff and Appellant.

Lloyd W. Pellman, County Counsel, and Philip S. Miller, Principal Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, Robert Soliz, appeals after he declined to amend his complaint after being given leave to do so for damages against Alexander H. Williams III, a Los Angeles Superior Court judge, and the case was dismissed pursuant to stipulation. In the published portion of the opinion, we discuss the application of the absolute judicial immunity from a lawsuit for damages to plaintiff's state law claims. We reverse the order sustaining the demurrer to the complaint in part as to claims for defamation and violations of civil rights in the fourth and fifth causes of action respectively. We affirm the demurrer and dismissal as to plaintiff's remaining claims.

## II. FACTUAL ALLEGATIONS OF THE COMPLAINT

The allegations of the complaint, which we are required by law to presume are true (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), are as follows. In November 1995, plaintiff, a person of Hispanic descent, was an employee of the County of Los Angeles; in the words of the complaint "a blue collar worker"; a member of the Los Angeles County Chicano Employees Association (LACCEA): the LACCEA was an employee organization recognized by the County of Los Angeles; and a plaintiff himself in an underlying law suit entitled Rico v. Nunez (Super. Ct. L.A. County, No. BC105152). The underlying lawsuit sought to enjoin the LACCEA elections which were scheduled to be held in Lancaster. This was despite the fact that LACCEA was based in Los Angeles. A different judge other than defendant issued injunctive relief which included directing the president of LACCEA to open the organization's financial records "to the rank-and-file" plaintiffs and the issuance of a temporary restraining order against holding the election in Lancaster. Eventually, after a defective notice was corrected by the LAC-CEA leadership, the election was held in Lancaster. LACCEA members aligned with plaintiff then "swept the elections."

Plaintiff also filed another LACCEA-related lawsuit raising issues of representation by a civil service advocate for the organization. (Soliz v. Ulloa (Super. Ct. L.A. County, No. BC108181).) There was a third pertinent lawsuit arising out of LACCEA activities. (Rico v. Ulloa (Super. Ct. L.A.

County, No. BC105152[1]).) In this latter lawsuit, another LACCEA member, Randolph N. Rico, sought compensatory and punitive damages arising out of his disqualification as a member and director of the organization. All three of these cases were found to be related and consolidated. The consolidated cases were assigned to defendant who sat in department 35 of Los Angeles Superior Court in its central district.

On November 17, 1995, all of the plaintiffs and defendants in the underlying lawsuits were present in the courthouse for a settlement conference. The settlement conference was being conducted pursuant to defendant's orders. The parties were using the noon hour in an effort to continue to seek settlement. Some of the parties remained in the courtroom during the settlement negotiations. The plaintiffs were sitting in the hallway of the courtroom outside of department 35. Defendant then "suddenly burst out of the door of the courtroom and angrily confronted" both plaintiffs in the underlying litigation. Defendant was not wearing a judicial robe. The complaint alleged: "[Defendant] in a very loud voice, in the hall, in the presence of other persons then in the public hall, verbally assaulted [plaintiff], and Rico, pointing his finger at plaintiff, and angrily yelling that plaintiffs' settlement demand was 'bullshit,' and, if they thought there was money in the case, they had 'shit for brains.'"

The response of plaintiff to defendant's conduct is set forth with specificity in the complaint. The specific allegations are as follows: "Plaintiff . . . , shocked and shamed by the conduct of defendant . . . , a judge, said nothing, and did nothing, as he feared the exercise of retaliatory authority by [defendant], who, although acting not in the courtroom but in the public hallway, and although acting during the lunch break and not during regular court hours, and although wearing not a robe but civilian clothes, was still a judge and cloaked with apparent authority of that office."

Plaintiff's lawyer had been down the hall in the courthouse making a telephone call. Plaintiff's counsel returned. At that time, defendant thumped his chest repeatedly. According to the complaint, defendant said, "[N]ow plaintiffs had to deal with him, i.e., [defendant], and that now he was their 'enemy.'" Defendant then entered the courtroom "still uttering imprecations in a loud voice." Defendant refused to grant the disqualification motion. The disqualification motion was supported by the declarations. Eventually, defendant recused himself.

On November 20, 1995, defendant spoke with a reporter for a newspaper, the Los Angeles Daily Journal. Defendant admitted that he had acted

---

[1]The complaint alleges three separate lawsuits were filed but two of them had the same case number. It is unclear whether two of the cases were consolidated. However, it is clearly alleged there were three underlying lawsuits.

inappropriately. However, while speaking with the reporter, defendant denied to have acted as alleged by plaintiff as well as Mr. Rico in the disqualification motion. The statements made to the reporter were untrue and were made with the knowledge of their falsity. The reporter for the Los Angeles Daily Journal published the false statements of defendant. Defendant's false statements to the reporter made plaintiff appear to be a liar.

In February 1997, the California Commission on Judicial Performance (the commission) made public its findings after an investigation of defendant. The commission publicly admonished defendant for his conduct. The commission found the acts alleged by plaintiff and Mr. Rico in the disqualification motion were in fact true. This finding was contrary to the statements made by defendant to the reporter for the Los Angeles Daily Journal.[2]

As a result of the foregoing allegations, plaintiff's complaint alleged causes of action for intentional and negligent infliction of emotional distress and defamation. The third cause of action for defamation related to defendant's statements in the hallway during the settlement conference on November 17, 1995. The fourth cause of action for defamation involved the November 20, 1995, statements to the reporter. The fifth cause of action was for a violation of plaintiff's civil rights pursuant to 42 United States Code section 1983 (section 1983) as well as claims under the California Constitution. In connection with the section 1983 cause of action, he alleged violations of the following rights under the United States Constitution: First Amendment right to seek redress of grievances by means of litigation before the judicial branch; due process of law under the Fourteenth Amendment; equal protection of the laws; not to be discriminated against based upon his race or " 'socioeconomic' class"; discrimination based upon race or ancestry; and discrimination based upon plaintiff's membership in the "working class."

---

[2] The commission found in part: "The Commission found that Judge Williams' conduct involved vulgar, abusive and demeaning language toward attorneys and constituted an improper display of personal hostility and embroilment . . . . The Commission further found the Judge Williams' abusive and hostile actions toward counsel reflected adversely on his judicial office. The Commission noted that, in accordance with the California Code of Judicial Conduct in effect at the time of Judge Williams' conduct, judges are expected to be impartial, patient, dignified and courteous when dealing with litigants and lawyers on matters pending before them (Canon 3B), and that even quasi-judicial activities must be conducted in a manner that does not demean the judicial office or interfere with the proper performance of judicial duty (Canon 4A). [¶] In arriving at its disposition, the Commission took into consideration representations from individuals whose recent experiences with Judge Williams had led them to the view that there had been substantial improvement in his judicial demeanor and temperament, as well as Judge Williams' own assurances that he had taken corrective measures to ensure that he would refrain from improper conduct in the future." ( Com. on Jud. Performance, Ann. Rep. (1997) p. 18.)

## III. Procedural Events

After the complaint was filed, defendant demurred to it. The sole ground of the demurrer was that defendant's conduct was such that he was immune from suit under both state and federal law. The matter was assigned to a judge from Orange County Superior Court. The demurrer was taken under submission without any appearances by the parties. The trial court concluded that all of defendant's conduct was such that he was immune from liability for monetary damages. The demurrer was sustained with leave to amend. Plaintiff then gave notice of an election not to amend. The parties then entered into a stipulation for entry of judgment based upon the failure to have amended the complaint. The stipulation specifically provided that plaintiff entered into the stipulation with the understanding that he would be permitted to appeal the order sustaining the demurrer. On October 31, 1997, the trial court entered judgment based upon the doctrine of judicial immunity from monetary damages liability in favor of defendant. On January 16, 1998, plaintiff filed a timely notice of appeal from the judgment of dismissal.

## IV. Standard of Review

The present case involves a complaint against an employee of a public entity and a claim of immunity for liability in a civil trial for monetary damages. ■ Because we are reviewing the sufficiency of a pleading, we apply the following standard of review to the state law claims: "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] . . . However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 966-967.) ■ Because the present case involves the application of a claim of governmental immunity from liability for monetary damages to the state law claims in the complaint, we also apply the test articulated in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 792-793 [221 Cal.Rptr. 840, 710 P.2d 907], where the California Supreme Court held: "It is well established that the allegations of a complaint must be liberally construed with a view to attaining substantial justice between the parties [citations]. We have also held that, 'in governmental tort cases "the rule is liability, immunity is the exception". . . . Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail.' [Citation.]" ■ Because the present case involves a claim against a public employee and is controlled by the California Tort Claims

Act, the following rules apply: "However, because under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus, 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.' [Citations.]" (*Id.* at p. 795.) It is a plaintiff's responsibility to plead " 'facts sufficient to show [their] cause of action lies outside the breadth of any applicable statutory immunity.' [Citation.]" (*Id.* at p. 796.)

■ Further, the present case involves an order sustaining the demurrer *with* leave to amend. After the time to amend had passed, plaintiff did not amend. Therefore, we apply the following standard of review: "When a plaintiff elects not to amend the complaint, it is presumed that the complaint states as strong a case as is possible (*Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 994 . . .); and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on any ground raised by the demurrer. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 . . . ; *Totten* v. *Underwriters at Lloyd's London* (1959) 176 Cal.App.2d 440, 442, 447-448 . . . .)" (*Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 [212 Cal.Rptr. 743].)

## V. ·DISCUSSION

### A. *Plaintiff's State Law Claims for Monetary Damages Arising From the November 17, 1995, Settlement Conference*

■ Plaintiff alleged state law claims for intentional and negligent infliction of severe emotional distress and defamation arising out of the events occurring at the settlement conference on November 17, 1995. Defendant argues that he is immune from the emotional distress and defamation claims in the first, second, and third causes of action arising out of the November 17, 1995, settlement conference. We agree. Civil Code section 47, subdivision (b)(2) states in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding." ■ The scope of the judicial immunity was described by the Court of Appeal in *Frost* v. *Geernaert* (1988) 200 Cal.App.3d 1104, 1107-1108 [246 Cal.Rptr. 440] as follows: "It is well established judges are granted immunity from civil suit in the exercise of their judicial functions. (*Tagliavia* v. *County of Los Angeles* (1980) 112 Cal.App.3d 759, 761 . . . ; *Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624, 629 . . . .) This rule applies even where the judge's acts are alleged to have been done maliciously and

corruptly. (*Tagliavia, supra,* at p. 761; accord, *Turpen* v. *Booth* (1880) 56 Cal. 65, 68.) The rule is based on ' "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself." ' (*Tagliavia, supra,* 112 Cal.App.3d at p. 762, quoting from *Bradley* v. *Fisher* (1871) 80 U.S. (13 Wall.) 335, 347. . . .) Judicial immunity is a principle of common law which is necessary for the welfare of the state and the peace and happiness of society. (*Tagliavia, supra,* at pp. 762-763; *Singer* v. *Bogen* (1957) 147 Cal.App.2d 515, 523-524 . . . .)" Judicial immunity from a civil action for monetary damages is absolute. (*Howard* v. *Drapkin* (1990) 222 Cal.App.3d 843, 851 [271 Cal.Rptr. 893]; *Pearson* v. *Reed* (1935) 6 Cal.App.2d 277, 281 [44 P.2d 592].)

California courts have applied the absolute common law and statutory judicial immunity in varying circumstances. (*Pickett* v. *Wallace* (1881) 57 Cal. 555, 557 [Supreme Court justices immune from suit for alleged errors in holding plaintiff in contempt]; *Turpen* v. *Booth* (1880) 56 Cal. 65, 68 [allegedly corrupt grand jurors who indicted plaintiff in the face of no evidence of criminal culpability over the objection of the district attorney were immune under judicial immunity]; *Frost* v. *Geernaert, supra,* 200 Cal.App.3d at pp. 1107-1110 [corrupt conspiracy among judges to rule against plaintiff in civil litigation subject to absolute judicial immunity]; *Paddleford* v. *Biscay* (1971) 22 Cal.App.3d 139, 141-144 [99 Cal.Rptr. 220] [judge who allegedly allowed arrest warrants to be issued without his personal review absolutely immune]; *Lewis* v. *Linn* (1962) 209 Cal.App.2d 394, 397-401 [26 Cal.Rptr. 6] [judge absolutely immune from slanderous statements made about a lawyer from the bench]; *Taliaferro* v. *County of Contra Costa* (1960) 182 Cal.App.2d 587, 590-594 [6 Cal.Rptr. 231] [judge who allegedly maliciously issued arrest warrant with specific knowledge that the underlying facts did not constitute the charged criminal conduct immune from suit]; *Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624, 627-635 [343 P.2d 931] [judicial immunity exists when a judge refuses to issue a writ of habeas corpus and a statute authorizing a financial penalty for such an error violates the doctrine of separation of powers]; *Reverend Mother Pauline* v. *Bray* (1959) 168 Cal.App.2d 384, 385-386 [335 P.2d 1018] [Court of Appeal justices immune from suit filed after they dismissed probate appeal allegedly for the purpose of retaliating against the plaintiffs' lawyer]; *Tagliavia* v. *County of Los Angeles* (1980) 112 Cal.App.3d 759, 761-763 [169 Cal.Rptr. 467] [improper act of remanding a defendant to custody subject to judicial immunity doctrine]; *Singer* v. *Bogen* (1957) 147 Cal.App.2d 515, 516, 525-526 [305 P.2d 893] [alleged improper order detaining a child by a juvenile court judge subject to absolute judicial

immunity]; *Perry* v. *Meikle* (1951) 102 Cal.App.2d 602, 605-606 [228 P.2d 17] [judge immune from false imprisonment suit arising from plaintiff's incarceration].)

■ In the present case, a settlement conference was being conducted in three consolidated lawsuits which had been assigned to defendant. Conducting settlement conferences is a judicial function and within the authority of defendant acting as a superior court judge. (Cal. Rules of Court, rule 222; Cal. Standards Jud. Admin., § 9 [23 pt. 2 West's Cal. Codes Ann. Rules (Appen.) (1996 ed.) p. 665]; Super. Ct. L.A. County Rules, rules 7.9(b)(5) & (6), 8.21.)[3] Decisional authority also recognizes the importance of settlement as part of the litigation process. (*Lu* v. *Superior Court* (1997) 55 Cal.App.4th

---

[3]Rule 222 of the California Rules of Court provides; "Rule 222. Mandatory settlement conferences. [¶] (a) [Settlement conference before trial] A mandatory settlement conference may be held in all long cause matters before the date set for trial. [¶] (b) [Other or additional conferences] On the joint request of all parties or by order of court, other or additional conferences may be held at any time. [¶] (c) [Persons attending] Trial counsel, parties, and persons with full authority to settle the case shall personally attend the conference, unless excused by the court for good cause. If any consent to settle is required for any reason, the party with that consensual authority must be personally present at the conference. [¶] (d) [Settlement conference statement] No later than five court days before the date set for the settlement conference, each party shall submit to the court and serve on each party a mandatory settlement conference statement containing a good faith settlement demand and an itemization of economic and non economic damages by each plaintiff and a good faith offer of settlement by each defendant. The statement shall set forth and discuss in detail all facts and law pertinent to the issues of liability and damages involved in the case as to that party and comply with any additional requirements imposed by local rule. [¶] (e) [Sanctions] The court may impose sanctions as provided by law for failure to comply with the provisions of this rule." Section 9 of the Standards of Judicial Administration states in relevant part, "[T]he dates assigned for a trial setting or pretrial conference, a settlement conference and for trial must be regarded by counsel as definite court appointments." (Cal. Standards Jud. Admin., § 9 [23 pt. 2 West's Cal. Codes Ann. Court Rules (Appen.), *supra*, p. 665].) Rule 7.9(b)(5) and (6) of the Los Angeles Superior Court Rules states: "(5) *Setting of Settlement Conference.* The Court may set a settlement conference on its own motion or at the request of any party. [¶] a) Attendance. Unless expressly excused for good cause by the judge, all persons whose consent is required to effect a binding settlement shall be personally present at a scheduled settlement conference. Included among such persons are: the litigants (unless consent of the particular litigant is not required for the settlement); an authorized representative of any insurance company which has coverage involved in the case; and an authorized representative of a corporation or other business or government entity which is a litigant. Such persons shall have full authority to make decisions or negotiate concerning the settlement of the case. [¶] b) Excuse From Attendance. Any request to the Court to excuse attendance of any such person shall be by written stipulation of the parties or by an *ex parte* application that complies with Rules 9.36, 9.37 and 9.41. A person excused by the court shall be immediately available for telephone communication with counsel and the court at the time set for the settlement conference. [¶] c) Familiarity With Case. Attorneys for all parties appearing in the action shall attend the conference and be intimately familiar with the pertinent available evidence involving both liability and damages. Such attorney shall be prepared to discuss the case in depth and, except for good cause shown, shall be the attorney who will try the case. [¶] d)

1264, 1270-1271 [64 Cal.Rptr.2d 561] [court-appointed discovery referee may act at settlement conference in complex litigation]; *Murphy* v. *Padilla* (1996) 42 Cal.App.4th 707, 712 [49 Cal.Rptr.2d 722] [result of court-supervised settlement conference enforceable pursuant to Code Civ. Proc., § 664.6[4]]; *Kohn* v. *Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1534 [28 Cal.Rptr.2d 780] [statute of frauds does not apply to agreement reached at mandatory settlement conference]; *Sigala* v. *Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 669 [19 Cal.Rptr.2d 38] [trial court has inherent power to require presence of a party at a settlement conference and parties who enter into litigation process must expect to participate in such proceedings]; *City of El Monte* v. *Takei* (1984) 158 Cal.App.3d 244, 248 [204 Cal.Rptr. 559] [sanctions may be imposed on nonparty insurance adjuster for failure to attend settlement conference].) Since the settlement conference was part of the exercise of defendant's authority, he was immune from liability arising from the statements, actions, and other conduct engaged in during those proceedings even though they occurred in the hallway outside

---

Liens. Plaintiff's attorney shall ascertain whether there are liens which bear on a potential settlement and, if so, request the claimants [or] their representatives to attend the conference or be available for telephone communication during the conference. [¶] (6) *Written Statements for Settlement Conferences.* Each party shall submit to the Court and serve upon adversaries a written statement not later than five calendar days before the conference. [¶] The written statement shall contain a concise statement of the material facts of the case and a factual and legal contentions in dispute. The statement also shall identify all parties and capacities in the action and contain citation of authorities which support legal propositions important to resolution of the case. The written statement of a party claiming damages shall contain a list of all special damages claimed as well as a statement of any amounts claimed as general and punitive damages and the total amount claimed as damages. [¶] . . . [¶] In a personal injury action the special damages shall be listed. The list shall include all such expenses incurred to the time of the settlement conference. The statements shall also include the general status of the case including offers of settlement in place." (Some italics added, boldface omitted.) Rule 8.21 of the Los Angeles Superior Court Rules states: "Although the trial judge may request counsel to further explore settlement, he/she should not engage in settlement discussions if any party objects thereto. If all counsel and parties agreed to settlement discussion with the trial judge and to waive any right to assert any disqualification which they might otherwise alleged therefrom, such agreements and waivers should be placed on the record. Ordinarily, such agreements and waivers should be sufficiently broad to expressly permit the trial judge to discuss the anticipated evidence and dollar amounts offered and demanded, not only with all counsel present, but also with counsel and the litigants separately and in confidence. [¶] If a settlement is not reached, the trial judge may proceed to the trial unless he/she believes disqualification is required by law or impartiality might reasonably be questioned. [¶] If a settlement is reached, ordinarily, the terms thereof and consent thereto by the parties, as well as counsel, should be stated on the record."

[4]Code of Civil Procedure section 664.6 states: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

of the courtroom; all of defendant's conduct having occurred physically inside the courthouse.

Plaintiff argues that defendant's conduct was so serious that absolute judicial immunity principles are therefore inapplicable to the events occurring in the hallway. We agree the misconduct is very, very serious. However, the immunity from a suit for damages at issue is not dependent on the severity of the misconduct. In this case, judicial immunity from a lawsuit for monetary relief depends on whether defendant engaged in the misconduct while involved in the exercise of a judicial function, even if he acted in excess of his jurisdiction. (*Falls* v. *Superior Court* (1996) 42 Cal.App.4th 1031, 1036 [49 Cal.Rptr.2d 908]; *Tagliavia* v. *County of Los Angeles*, *supra*, 112 Cal.App.3d at p. 761.) Moreover, we have previously cited a number of cases that involve allegations, which because they were challenged at the demurrer stage were presumed to be true, of extremely serious judicial misconduct involving malicious misuse of the power to issue warrants; the knowing incarceration of an innocent person; illegally removing a child from his parents' custody; and conspiracies among judicial officers to deny a plaintiff the right to litigate. (See *ante,* at p. 586.) Those cases also involved allegations of extremely serious judicial misconduct that violated the litigants' statutory and constitutional rights, and in all of those scenarios, the absolute immunity from a suit for damages was found to apply as a matter of law. The seriousness of the misconduct identified in the complaint in the present case does not alter the fact that judicial immunity bars the damage claims in the first, second, and third causes of action, all of which are premised on the statements made and the conduct engaged in at the November 17, 1995, settlement conference.

Finally, in terms of the state law claims, plaintiff relies on the case of *United States* v. *Lanier* (1997) 520 U.S. 259, 261 [117 S.Ct. 1219, 1222-1223, 137 L.Ed.2d 432] which involved the question of whether a judge who sexually assaulted five court employees was given fair notice that such rapes could violate 18 United States Code section 242, a Reconstruction Era civil rights enactment.[5] Needless to note, sexual assaults against court employees are materially different from the conduct in the present case, which involves

---

[5]Title 18 United States Code section 242 provides: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted

inappropriate statements and conduct directed at parties to a case over which defendant was presiding. Moreover, the United States Supreme Court in *Lanier* did not discuss the issue of absolute judicial immunity, which was the ground for defendant's demurrer in the present lawsuit. In *Lanier*, there was a discussion of a qualified immunity but then only in the context of the Fifth Amendment due process clause fair warning requirement. (520 U.S. at pp. 264-272 [117 S.Ct. at pp. 1224-1228].) The United States Supreme Court has repeatedly emphasized that its decisions are not controlling authority for propositions not considered by it in the case. (*Landgraf* v. *USI Film Products* (1994) 511 U.S. 244, 265 [114 S.Ct. 1483, 1497, 128 L.Ed.2d 229] ["[T]he 'maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.' "]; *R. A. V.* v. *St. Paul* (1992) 505 U.S. 377, 386-387, fn. 5 [112 S.Ct. 2538, 2545, 120 L.Ed.2d 305] [it is "contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned"]; *United States* v. *Stanley* (1987) 483 U.S. 669, 680 [107 S.Ct. 3054, 3062, 97 L.Ed.2d 550] [". . . no holding can be broader than the facts before the court"]; *Adams* v. *Texas* (1980) 448 U.S. 38, 45, fn. 3 [100 S.Ct. 2521, 2526, 65 L.Ed.2d 581] [issue of applicability of *Witherspoon* v. *Illinois* (1968) 391 U.S. 510, 519 [88 S.Ct. 1770, 1775, 20 L.Ed.2d 776] to Texas death qualification process not foreclosed by that decision "because the issue was not explicitly raised in that case"].) Simply stated, *Lanier* is not controlling authority because the present issue was not discussed nor raised in that case, which involved entirely different questions concerning fair warning under the Fifth Amendment due process clause.

B. *State Law Defamation Claim Arising From the November 20, 1995, Statements to a Journalist*

██ Defendant alleges that the absolute judicial immunity from a suit for damages under state law applies to the statements made on November 20, 1995, to a reporter. No California decisions discuss this issue of first impression in this state's courts. ██ The same absolute judicial immunity from a damage suit in federal court is derived from English common law. (*Antoine* v. *Byers & Anderson, Inc.* (1993) 508 U.S. 429, 432-433 [113 S.Ct. 2167, 2169-2170, 124 L.Ed.2d 391]; *Pulliam* v. *Allen* (1984) 466 U.S. 522,

use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

529-536 [104 S.Ct. 1970, 1974-1978, 80 L.Ed.2d 565].) California's rule of absolute judicial immunity from a suit for damages likewise finds it basis in English common law. (*Budwin* v. *American Psychological Assn.* (1994) 24 Cal.App.4th 875, 884 [29 Cal.Rptr.2d 453]; *Howard* v. *Drapkin, supra,* 222 Cal.App.3d at pp. 851-853.) Hence, California courts have often relied on the decisions of the federal courts in evaluating the scope of absolute judicial immunity from a damage suit. (E.g. *Turpen* v. *Booth, supra,* 56 Cal. at p. 68; *Branson* v. *Martin* (1997) 56 Cal.App.4th 300, 307 [65 Cal.Rptr.2d 401]; *Falls* v. *Superior Court, supra,* 42 Cal.App.4th at pp. 1036-1037; *Howard* v. *Drapkin, supra,* 222 Cal.App.3d at pp. 850-851, fn. 2; *Paddleford* v. *Biscay, supra,* 22 Cal.App.3d at pp. 143-144.) ▮ As we will note, federal decisions have made it clear under the circumstances present in this case, statements by judges to journalists, are not always protected by the judicial immunity from a lawsuit for damages.

Plaintiff argues that immunity from an action for damages is unavailable because defendant was not acting in a judicial capacity when speaking to the reporter. The most recent California case to synthesize federal authority in terms of the scope of the absolute judicial immunity from a suit for damages was authored by our colleague, Associate Justice Walter Croskey, in *Howard* v. *Drapkin, supra,* 222 Cal.App.3d at page 851, footnote 3 where he wrote: " 'Immunity exists for "judicial" actions; those relating to a function normally performed by a judge and where the parties understood they were dealing with the judge in his official capacity. [Citations.]' (*Olney* v. *Sacramento County Bar Assn.* (1989) 212 Cal.App.3d 807, 811 . . . .) Thus, the line is drawn 'between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.' (*Forrester* v. *White* (1988) 484 U.S. 219, 227 . . .) Acts and decisions which are not judicial or adjudicative, i.e., acts and decisions performed and made by a judge which are administrative or legislative, 'even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts.' (*Id.* at p. 228 . . . .)" In *Taliaferro* v. *County of Contra Costa, supra,* 182 Cal.App.2d at pages 592-593, the Court of Appeal described the scope of the absolute judicial immunity from a damage suit as follows: "As Justice White pointed out in *Frazier* v. *Moffatt* [(1951)] 108 Cal.App.2d 379, . . . 386 . . . : '. . . the test of immunity from a civil suit for damages on the part of a judicial officer is not whether he committed an error of judgment in acting as he did, but the question of judicial immunity must be determined on the basis of whether the act in question was within the general scope of the officer's judicial powers and whether he acted in an honest belief that he was legally warranted in doing it.' "

■ The United States Supreme Court has adopted a two-pronged test for determining whether an act was "judicial" for absolute immunity from a suit for damages purposes: "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson* v. *Ray* [(1967)] 386 U.S. [547,] 554 ('[I]mmunity applies even when the judge is accused of acting maliciously and corruptly'). See also *Harlow* v. *Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity). [¶] Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester* v. *White* [(1988)] 484 U.S. [219,] 227-229; *Stump* v. *Sparkman* [(1978)] 435 U.S. [349,] 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357; *Bradley* v. *Fisher* [(1871) 80 U.S.] 13 Wall. [335,] 351." (*Mireles* v. *Waco* (1991) 502 U.S. 9, 11-12 [112 S.Ct. 286, 288, 116 L.Ed.2d 9].)

■ In terms of specific application of these general principles, the Court of Appeals for the Sixth Circuit recently described the circumstances where other opinions have found the absolute judicial immunity from a suit for damages to *not* exist. (*Barrett* v. *Harrington* (6th Cir. 1997) 130 F.3d 246, 256, fn. 11.) We report the Sixth Circuit panel's findings as follows: "In the following cases, courts have found that the judges acted outside of their judicial capacity and were not entitled to immunity: *Forrester v. White*, 484 U.S. 219 . . . (1988)(state court judge did not have absolute immunity from damages suit under § 1983 for his decision to demote and dismiss a probation officer); *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989) (state court judge was not entitled to judicial immunity in connection with order declaring moratorium on issuance of writs of restitution from December 15 through January 2, as judge was acting in administrative and not judicial capacity); *King v. Love*, 766 F.2d 962, 968 (6th Cir.), cert. denied, 474 U.S. 971 . . . (1985)(although setting bond on an arrest warrant is a judicial act, the act of deliberately misleading the police officer who was to execute the warrant about the identity of the person sought was nonjudicial); *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984) (juvenile court judge's initiation of criminal prosecution and civil contempt proceeding against father for child support in arrears constituted nonjudicial acts); *New Alaska Development Corporation v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989) (receiver appointed by state court to manage business assets of an estate was entitled to absolute derivative judicial immunity, but receiver was not absolutely immune from allegations that he stole assets or slandered parties, as such alleged acts were not judicial); *Harper v. Merckle*, 638 F.2d 848 (5th Cir.),

*cert. denied*, 454 U.S. 816, . . . (1981) (holding a contempt proceeding and ordering plaintiff incarcerated were not judicial acts where controversy that led to incarceration did not center around any matter pending before the judge, but around domestic problems of plaintiff former wife who worked at the courthouse); *Harris v. Harvey*, 605 F.2d 330 (7th Cir.1979), *cert. denied*, 445 U.S. 938 . . . (1980) (allegedly repeated communications to the press and city officials which were critical of police lieutenant, and the improper instigation of criminal proceedings against the lieutenant by judge as part of a racial campaign to discredit lieutenant were not judicial acts)." (*Barrett* v. *Harrington, supra*, 130 F.3d at pp. 256-257, fn. 11.)

In *Barrett*, a section 1983 action against a state court judge, the Sixth Circuit held the absolute judicial immunity from a suit for damages extended to letters sent by the jurist to prosecutors about a disgruntled litigant who was perceived to be a threat. The judge's letter requested a criminal investigation be commenced. (*Barrett* v. *Harrington, supra*, 130 F.3d at pp. 257-260.) However, the Sixth Circuit held that comments to a reporter about how the disgruntled litigant was a danger were not subject to the absolute privilege. Because it is of direct pertinence to this case, we set forth in detail the Sixth Circuit's analysis: "It is well-settled that . . . making allegedly false statements to the news media does not qualify as a judicial act. In *Buckley*, a murder defendant against whom charges been dropped, brought a § 1983 action against prosecutors claiming malicious prosecution. Among his various claims, Buckley claimed that during the prosecutor's public announcement of the indictment, State's Attorney Fitzsimmons made false assertions about numerous pieces of evidence which tied him to the murder. The Court ruled that Fitzsimmons['s] statements to the media were not entitled to absolute immunity. The Court reasoned that, under the functional approach, statements to the media 'have no functional tie to the judicial process just because they are made by a prosecutor.' [*Buckley* v. *Fitzsimmons* (1993) 509 U.S. 259, 277 [113 S.Ct. 2606, 2617-2618, 125 L.Ed.2d 209].] The Court clarified the scope of absolute immunity with regard to defamatory statements: '[Absolute immunity] does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding (unless such publication is an act incidental to the proper initiation thereof, or giving legal effect thereto); nor does it apply to or include any publication of defamatory matter to any person other than those to who, or in any place other than that in which, such publication is required or authorized by law to be made for the proper conduct of the judicial proceedings.' *Buckley*, 509 U.S. at 277 n. 8 . . . (*citing* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings*, 9 Colum.L.Rev. 463, 489 (1909)(*footnotes omitted*)). *See also, New Alaska Development Corporation v. Guetschow*, 869 F.2d 1298 (9th Cir.1989)

(holding that while a receiver appointed by the court to manage an estate was entitled to judicial immunity from suit claiming mismanagement, receiver was not absolutely immune from allegations that he stole assets or slandered the plaintiff). [¶] In *Harris v. Harvey*, the Fifth Circuit ruled that a judge was not immune from liability stemming from allegedly slanderous statements made to the news media accusing the plaintiff of criminal conduct. 605 F.2d 330 (6th Cir. 1979). The judge seeking immunity made repeated communications to the press and city officials over the course of more than a year, including calling the plaintiff 'a fixer, a briber, and a sycophant.' *Harris*, 605 F.2d at 334. The court ruled that, '[s]uch acts were not judicial because they were not functions normally performed by a judge, and were not ["]to the expectations of the parties["] in that as to these acts the parties did not deal with him in his judicial capacity . . . .' *Harris*, 605 F.2d at 336. [¶] Similarly, Judge Harrington's statements to the media cannot be said to be related to her duties as a judge. Even in the abstract, speaking to the media and giving interviews about a litigant on a case over which the judge has presided is not normally a judicial function nor is it usually in furtherance of a judicial function. Indeed, many, if not most, judges will not speak to the media concerning cases of litigants who have appeared before them. Unlike filing a complaint with law enforcement concerning a disgruntled litigant who is harassing a judge, speaking to the media concerning that litigant in no way protects the integrity of the judicial institution or the decision-making process. Although it is an understandable human instinct to defend one's self in the media when attacked publicly, such a defense is not a judicial function—it is self-defense. The distinction here is a clear one. When a judge makes a complaint to law enforcement concerning a litigant's conduct which is adversely affecting or obstructing the judicial process, that judge is requesting some official action in connection with the judicial process. In contrast, an interview with the media concerning the litigant furthers no official act or sanction, it simply informs the public about the judge's position or views." (*Barrett v. Harrington*, *supra*, 130 F.3d at pp. 260-261, fn. omitted.) The omitted footnote in the immediately foregoing quotation is as follows: "The Court further stated: 'The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory to these functions.' *Buckley*, 509 U.S. 259 [113 S.Ct. 2606, 125 L.Ed.2d 209]." (*Barrett v. Harrington*, *supra*, 130 F.3d at p. 261, fn. 23.)

We recognize *Barrett* is only persuasive rather than controlling authority in California courts because it is a decision of federal circuit judges. (*People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129]; *Rohr Aircraft Corp. v. County of San Diego* (1959) 51 Cal.2d 759, 764-765 [336 P.2d 521] revd. on other grounds *Rohr Aircraft Corp.*

v. *San Diego County* 362 U.S. 628 [80 S.Ct. 1050, 4 L.Ed.2d 1002].)

 Nonetheless, *Barrett* is fully consistent with other decisional authority digested above which holds the absolute judicial immunity against the imposition of monetary damages does not extend to defamatory statements made by a judge to a reporter. Speaking to a reporter about a pending lawsuit is not a normal judicial function. We recognize that the judicial function can be furthered by statements to journalists; however, the present case involves a verified complaint which alleges defendant articulated false statements about the incident which thereby made plaintiff appear to be liar. Under these narrow circumstances, we conclude the absolute judicial privilege against a suit for damages is not applicable given the allegations of the complaint.[6]

### C. *Federal Civil Rights Claims**

. . . . . . . . . . . . . . . . . . . . . . . . .

## VI. Disposition

The judgment of dismissal is affirmed as to the first, second, and third causes of action for monetary damages. The order sustaining the demurrer

---

[6]We have only discussed the sole issue raised by the parties—absolute judicial immunity from a suit for damages. We note that there may be various other defenses to the facial validity of the complaint which have not been raised either before us or in the trial court. For example, the complaint fails to allege that a claim was filed as required by Government Code sections 905, 905.2, and 945.4. The failure to allege compliance with the claim requirement in a suit against a public employee is a ground for a general demurrer to a complaint. (*Tapia* v. *County of San Bernardino* (1994) 29 Cal.App.4th 375, 387 [34 Cal.Rptr.2d 431]; *Wood* v. *Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1119 [31 Cal.Rptr.2d 8].) Further, there may be privileges which are applicable to statements made during the conversation with the journalist. (E.g., Rest.2d Torts, § 594, com. k, p. 267 ["A conditional privilege exists under the rule stated in this Section when the person making the publication reasonably believes that his interest in his own reputation has been unlawfully invaded by another person and that the defamatory manner that he publishes about the other is reasonably necessary to defend himself."]; Civ. Code, § 47, subd. (c) [various privileges related to litigation].) There may be other pleading deficiencies which the parties have not litigated. They have not been raised on appeal and we will not reach the merits of other potentially dispositive contentions. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].) Upon issuance of the remittitur, these issues may be litigated in a judgment on the pleadings motion, by way of a summary judgment motion, or as part of the *in limine* motion process prior to a trial. Further, the facts may well turn out to be that nothing untrue or defamatory was uttered by defendant in the conversation with the journalist. We are required by controlling California Supreme Court authority to assume all of the facts alleged in the complaint are true for purposes of ruling on the demurrer dismissal. We recognize the facts may turn out to be something entirely different.

*See footnote, *ante*, page 577.

as to the fourth and fifth causes of action for defamation and a violation of civil rights including those under 42 United States Code section 1983 are reversed. Each side is to bear its own costs on appeal.

Weisman, J.,* and Johnson, J.,† concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Associate Justice of the Court of Appeal, Second District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.