[No. C047980. Third Dist. Aug. 17, 2005.]

JEROME J. REGAN, Plaintiff and Appellant, v.
DAVID L. PRICE, Defendant and Respondent.

COUNSEL

Robert D. Kingslan; McDonough Holland & Allen and Ann Taylor Schwing for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Darryl L. Doke and Jill Buttram Scally, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BUTZ, J.**—This case presents the issue of whether a judicial officer enjoys absolute immunity from civil liability for assaulting and battering a litigant. We conclude that he does not and shall reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from a judgment following the sustaining of a demurrer without leave to amend. Accordingly, we summarize, and are required to accept as true, all well-pleaded material allegations of the complaint. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8–9, fn. 3 [32

Cal.Rptr.2d 244, 876 P.2d 1043]; *Soliz v. Williams* (1999) 74 Cal.App.4th 577, 581 [88 Cal.Rptr.2d 184] (*Soliz*).)

Defendant David L. Price is an attorney in Roseville who was appointed by the Placer County Superior Court to act as discovery referee in a case entitled *Regan v. Martin*. During the litigation, Price and Jerome J. Regan's attorney, Robert Kingslan, became embroiled in a personality clash, with Kingslan questioning Price's ability to contain his emotions.

On June 14, 2004, in a telephone conference call among Kingslan, Price and opposing Attorney Jonathan Tyrell, Price falsely accused Kingslan of stealing documents from a previous deposition. As a result of the conversation, Kingslan concluded that Price could not continue to be a fair and impartial discovery referee in the lawsuit.

The following day, the deposition of Jennifer Martin (the defendant in *Regan v. Martin*) was scheduled to be taken by Kingslan at Price's office. Prior to the deposition, Kingslan drafted a letter informing Price that he would be moving for a protective order to remove Price from acting as discovery referee in the case.

At the time of the scheduled deposition, Kingslan and Regan entered Price's office and hand-delivered the letter to Price in the outer office. Regan and Kingslan stood there for a moment while Price read the one-paragraph letter. Kingslan and Regan then went into the deposition room, where Kingslan handed Attorney Tyrell a copy of the letter. As Kingslan and Regan turned to leave the room, Price appeared, blocking the door. At this point, Kingslan handed Price copies of the documents (belonging to Regan) that Price had previously accused him of stealing. Kingslan and Regan then attempted to leave the room by stepping around Price. Instead of allowing them to leave the room, Price shut the door and blocked it with his body. Kingslan then grabbed the door and forced it partially open, but Price kept exerting force in the opposite direction. Kingslan finally managed to open the door and escape. When Regan attempted to follow Kingslan out of the room, Price slammed the door against Regan's body, injuring him in the shoulder and neck area, where Regan had had radical cancer surgery.

Price, who was much younger than the 63-year-old Regan, was aware of Regan's frail condition. As a result of Price's actions, Regan suffered physical injury and emotional distress.

Regan filed a complaint against Price seeking damages on theories of false imprisonment, assault, battery, negligence and infliction of emotional distress. Price demurred to the complaint on the ground that, as discovery referee, his conduct was "protected by absolute judicial immunity."

The trial court sustained the demurrer without leave to amend on the ground that Price enjoyed absolute judicial immunity for all the acts alleged in the complaint.

## DISCUSSION

### I.  The Principle of Judicial Immunity

"The scope of the judicial immunity was described by the Court of Appeal in *Frost v. Geernaert* (1988) 200 Cal.App.3d 1104, 1107–1108 [246 Cal.Rptr. 440] as follows: 'It is well established judges are granted immunity from civil suit in the exercise of their judicial functions. (*Tagliavia v. County of Los Angeles* (1980) 112 Cal.App.3d 759, 761 [169 Cal.Rptr. 467]; *Oppenheimer v. Ashburn* (1959) 173 Cal.App.2d 624, 629 [343 P.2d 931].) This rule applies even where the judge's acts are alleged to have been done maliciously and corruptly. (*Tagliavia, supra,* at p. 761; accord, *Turpen v. Booth* (1880) 56 Cal. 65, 68.) The rule is based on " 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself.' " (*Tagliavia, supra,* 112 Cal.App.3d at p. 762, quoting from *Bradley v. Fisher* (1871) 80 U.S. (13 Wall.) 335, 347 [20 L.Ed. 646, 649].) Judicial immunity is a principle of common law which is necessary for the welfare of the state and the peace and happiness of society. (*Tagliavia, supra,* at pp. 762–763; *Singer v. Bogen* (1957) 147 Cal.App.2d 515, 523–524 [305 P.2d 893].)' Judicial immunity from a civil action for monetary damages is absolute. (*Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 851 [271 Cal.Rptr. 893] [(*Howard*)]; *Pearson v. Reed* (1935) 6 Cal.App.2d 277, 281 [44 P.2d 592].)" (*Soliz, supra,* 74 Cal.App.4th at pp. 585–586.)

The privilege of judicial immunity applies not only to judges, but to all persons who act in a judicial capacity, such as court commissioners and court-appointed referees performing subordinate judicial duties. (*Howard, supra,* 222 Cal.App.3d at pp. 852–853; accord, *Budwin v. American Psychological Assn.* (1994) 24 Cal.App.4th 875, 884 [29 Cal.Rptr.2d 453].) Thus, as Regan concedes, Price's alleged conduct is cloaked with the same immunity as if he had been a sitting judge.

However, not all acts by judges are immune from civil liability. " 'Immunity exists for "judicial" actions; those relating to a function normally performed by a judge and where the parties understood they were dealing with the judge in his official capacity. [Citations.]' (*Olney v. Sacramento County Bar Assn.* (1989) 212 Cal.App.3d 807, 811 [260 Cal.Rptr. 842].) Thus, the line is drawn 'between truly judicial acts, for which immunity is

appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.' (*Forrester v. White* (1988) 484 U.S. 219, 227 [98 L.Ed.2d 555, 565, 108 S.Ct. 538].)" (*Howard, supra,* 222 Cal.App.3d at p. 851, fn. 3.)

■ " '[O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. [Citations.] Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " (*Soliz, supra,* 74 Cal.App.4th at p. 592.) The question we face here is whether the first exception applies.

## II.  Application to the Present Case

Price claims he is protected by absolute judicial immunity because all of the alleged tortious acts in the deposition room were undertaken "in the course of Price's exercise of his authority as a judicially appointed referee." He characterizes his conduct as judicial in nature because its purpose was "to preserve order in the proceeding—to prevent a party from leaving a properly noticed deposition he was appointed to referee." Regan counters that physically assaulting a litigant can never be a judicial function. The law supports Regan's position, except in extraordinary cases.

The case with the fact pattern closest to the one here is *Gregory v. Thompson* (9th Cir. 1974) 500 F.2d 59 (*Gregory*). The plaintiff Gregory, a retired actor, accompanied a litigant accused of a minor traffic violation into Judge Thompson's courtroom and asked to represent the litigant. Judge Thompson retorted that a nonlawyer could not so act and ordered Gregory to leave his courtroom. Gregory answered, " 'O.K., you throw me out,' " whereupon the judge "did just that." (*Id.* at p. 61.) He stepped away from his desk, forced Gregory out the door, threw him to the floor, jumped on him and beat him until court personnel rushed to Gregory's rescue. The Ninth Circuit affirmed a jury award of compensatory and punitive damages against Judge Thompson. (*Ibid.*)

Judge Thompson claimed that his acts were protected by judicial immunity because he was exercising his "inherent power to maintain order in the courtroom" by evicting Gregory. (*Gregory, supra,* 500 F.2d at p. 63.) The court disagreed. It first noted that "[w]hen courts have spoken of immunity for acts within the jurisdiction of a judge, they have declared that the doctrine insulates judges from civil liability 'for acts committed within their *judicial* jurisdiction,' or 'for acts within [their] *judicial* role,' [citation] or for 'their

*judicial* acts.' [Citation.] Thus judicial immunity does not automatically attach to all categories of conduct in which a judge may properly engage, but only to those acts that are of a judicial nature." (*Ibid.*)

After acknowledging that it is within a judge's power to maintain order in the courtroom, the *Gregory* court continued: "It may even be necessary in an isolated instance to use physical force to preserve order. Though necessary, that does not mean the judge is immune. *The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached.* A judicial act within the meaning of the doctrine may normally be corrected on appeal. [Citation.] But when a judge exercises physical force in a courtroom, his decision is not amenable to appellate correction. More importantly, we cannot believe that the purpose of the judicial immunity doctrine—to promote 'principled and fearless decision-making'—will suffer in the slightest if it is held that judges who physically assault persons in their courtrooms have no automatic immunity." (*Gregory, supra,* 500 F.2d at p. 64, italics added.)

Although the conduct in our case took place in a deposition room at Price's law office, rather than a courtroom, *Gregory* is indistinguishable from the present case. Judges are insulated from civil liability for exercising *judicial* functions. A judge who applies brute force to a litigant is not engaging in any task that can be reasonably associated with his role as a judge, except in an extraordinary case. Such a situation might occur where a litigant has initiated an assault on court staff, and the judge physically intervenes to protect staff because court security personnel are absent or unable to do so.

Price rejoins that *Gregory's* reasoning has been "impliedly rejected" by the United States Supreme Court in *Mireles v. Waco* (1991) 502 U.S. 9 [116 L.Ed.2d 9, 112 S.Ct. 286] (*Mireles*). In *Mireles,* when a public defender failed to appear at the initial call of the defendant judge's morning calendar, the angry judge ordered police officers to seize him and, with " 'excessive force' " escort him into the judge's courtroom. According to the complaint, the officers used unreasonable force and violence to seize the plaintiff from another courtroom in which he had been waiting to appear and " 'slammed' him through the doors and swinging gates" into the defendant judge's courtroom. (*Id.* at p. 10 [116 L.Ed.2d at p. 13].) In a per curiam opinion, the Supreme Court held that the judge's conduct was protected by absolute judicial immunity, declaring that "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." (*Id.* at p. 12 [116 L.Ed.2d at p. 14].) Contrary to Price's suggestion, at no point in *Mireles* did the court expressly or impliedly disapprove of *Gregory.* In fact, the Supreme Court has cited *Gregory* only

once, in a footnote, where it spoke favorably about *Gregory*'s holding in the context of examining necessary attributes of a "judicial act." (*Stump v. Sparkman* (1978) 435 U.S. 349, 362, fn. 10 [55 L.Ed.2d 331, 342, fn. 10, 98 S.Ct. 1099, fn. 10] (*Stump*), citing *Gregory*, *supra*, 500 F.2d at p. 64 ["task normally performed by a sheriff or bailiff, was 'simply not an act of a judicial nature' "].)

The key difference between *Gregory* and *Mireles* is that in the former case, the judge stepped away from the bench (and out of his judicial role) by physically attacking the plaintiff, whereas in the latter the judge exercised his recognized judicial authority to *direct court personnel* to escort an absent attorney into the courtroom. As *Gregory* points out, Judge Thompson could have chosen to summon officers to remove an unwanted person from his courtroom, but instead took it upon himself to perform a quasi-police function. "Judge Thompson's choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time." (*Gregory*, *supra*, 500 F.2d at p. 65.)

Likewise, here, if Price had summoned an officer and directed him to prevent Regan and Kingslan from leaving the deposition room, *that act* would be covered by judicial immunity.[1]

Finally, Price's reliance on *Soliz*, *supra*, 74 Cal.App.4th 577, is unconvincing. In *Soliz*, a judge emerged from his courtroom during the noon hour at a settlement conference, approached a plaintiff who was sitting in the hallway, and in an angry verbal outburst, told him his settlement demand was " ' "bullshit," ' " and that if the plaintiffs thought they were going to get any money out of the case, " 'they had "shit for brains." ' " (*Id.* at p. 582.) The *Soliz* court held that the judge was absolutely immune from a suit for intentional and negligent infliction of emotional distress based on this conduct, because "[c]onducting settlement conferences is a judicial function and within the authority of defendant acting as a superior court judge." (*Id.* at p. 587.)

The ruling in *Soliz* was justified because the judge's conduct, no matter how inappropriate or ill-motivated, was still within the scope of his judicial

---

[1] We are unimpressed with Price's attempt to distinguish *Gregory* on the basis that, since no sheriff or bailiff was at his disposal, Price had no option other than to use self-help to keep the litigants inside the deposition room. Not only does this contention improperly assume facts not pleaded in the complaint, but it is plainly wrong. We know of no rule or canon that would absolutely sanction a judge personally assaulting or battering any person as a tool to maintain order in a judicial proceeding. In our view, except in extraordinary circumstances, e.g., to protect court staff when security personnel are absent or unable to do so, any judge who resorts to such behavior disgraces rather than enhances his or her judicial office.

role in supervising a settlement conference. The judge's comments related to the subject matter of the suit, took place inside the courthouse, and constituted an effort, however misguided, to exert pressure on one of the parties, a common tactic used by settlement judges.[2]

We cannot accept Price's claim that a judge may, with absolute immunity, physically assault a litigant on the ground that he was exercising his powers to compel the parties to proceed with a scheduled deposition. Under the same rule, a judge could, without incurring civil liability, step down from the bench and choke an unruly litigant under the "judicial" auspices of restoring order to the courtroom.

We emphasize that the test for whether an act by a judge is a "judicial" one to which judicial immunity attaches must be determined by "whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." (*Stump, supra*, 435 U.S. at p. 362 [55 L.Ed.2d at p. 342].) The use of physical force on a litigant is not an act that is normally performed by a judge. Price's alleged misconduct was not a judicial act under any sensible meaning of the term and therefore was not protected by absolute immunity.

### III.   Conclusion

A judge's robe is not a king's crown. The object of judicial immunity is to ensure " 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension [of civil liability].' " (*Tagliavia v. County of Los Angeles, supra*, 112 Cal.App.3d at p. 762, quoting *Bradley v. Fisher, supra*, 80 U.S. (13 Wall.) at p. 347 [20 L.Ed. at p. 649].) It was never intended to protect acts of thuggery against litigants merely because the assailant happens to be a judge.

---

[2] Notably, the *Soliz* court *rejected* the judge's defense of judicial immunity as to a defamation cause of action based upon his having denied committing the same alleged acts to a news reporter, reasoning that "[s]peaking to a reporter about a pending lawsuit is not a normal judicial function." (*Soliz, supra*, 74 Cal.App.4th at p. 595; see also *id.* at pp. 590–594.)

## DISPOSITION

The judgment is reversed. Appellant shall recover his costs on appeal. (Cal. Rules of Court, rule 27(a).)

Scotland, P. J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 2, 2005.